No. 3232

Second Circuit

———

SWANN v. SCALLAN
CHARLES E. PRICE, Intervenor,
Third Opponent

———

(June 28, 1928.   Opinion and Decree.)

———

(*Syllabus by the Court*)

1. Louisiana   Digest—Sequestration—Par.
   12; Courts—Par. 128.

The value of the property seized, the title
to which is in dispute, and the amount
of damages demanded for the wrong-
ful seizure thereof, constitute the
amount in controversy and determine
the jurisdiction of the appellate court.

    Ludeling vs. Garrett, 50 La. Ann.
    118, 23 So. 94.

2. Louisiana   Digest—Sequestration—Par.
   34; Attorneys—Par. 59.

Where property belonging to a third per-
son is illegally seized as the property
of the plaintiff's debtor, and the owner
is compelled to employ an attorney at
law to secure the release of his prop-
erty from the seizure, he is entitled
to recover as damages the reasonable
fees of his attorney.

    White vs. Givens, 29 La. Ann. 573.
    Gilkerson-Schloss Com. Co. vs. Yale
      & Bowling, 47 La. Ann. 690, 17 So.
      244.
    Soniat vs. Whitmer, 141 La. 235, 74
      So. 916.
    Bailey vs. Williams, 158 La. 439, 104
      So. 197.

Appeal from the Ninth Judicial District
Court, Parish of Rapides.   Hon. R. C. Cul-
pepper, Judge.

Action by Nicholas L. Swann against
Albert Scallan.   Charles E. Price, inter-
venor, third opponent.

There was judgment for defendant and
plaintiff appealed.

Judgment affirmed.

T. A. Carter; L. P. Whittington, of Alex-
andria, attorneys for plaintiff, appellant.

Peterman, Dear and Peterman, of Alex-
andria, attorneys for defendant, appellee.

Peterman, Dear and Peterman, of Alexan-
dria, attorneys for intervenor, third oppo-
nent, appellee.

STATEMENT OF THE CASE

REYNOLDS, J.   The plaintiff, Nicholas
L. Swann, sued out a writ of sequestration
against the defendant, Albert Scallan, and
caused to be seized thereunder thirteen
hogs of the property of intervenor, third
opponent, Charles E. Price.

Price filed in the suit a rule, alleging
that he was the owner of the hogs and
praying that they be ordered released from
seizure and that he be awarded attorney's
fees in the sum of $50.00 as damages.

Plaintiff, Nicholas L. Swann, without
objecting to the manner in which inter-
venor third opponent came into the suit,
filed an answer to the rule in which he
denied that Price was the owner of the
hogs.

The issues thus made up by the rule
and the answer thereto were tried and
there was judgment in favor of Price and
against Swann ordering the thirteen hogs
released from seizure and awarding Price
damages in the sum of $50.00 as attorney's
fees.

From this judgment Swann appealed.

Intervenor and third opponent Price has filed in this court a motion to dismiss Swann's appeal on the ground that the amount involved is less than the minimum jurisdiction of this court.

## OPINION

### ON MOTION TO DISMISS APPEAL

Both the value of the hogs seized and the damages claimed for illegal seizure must be considered in arriving at the amount involved. The value of the hogs was about $81.00 and the damages claimed was $50.00. Therefore the court has jurisdiction of the appeal and the motion to dismiss must be denied.

### ON THE MERITS

The evidence shows that the thirteen head of hogs seized under the writ of sequestration issued against Albert Scallan belonged to intervenor, third opponent, Charles E. Price.

Price testified:

"Q. Mr. Price, this rule was brought for you, in which you claim that thirteen head of hogs were seized the first part of December in your possession. Is that right?

"A. Yes, sir.

"Q. Wasn't Nicholas L. Swann present at the time these hogs were seized?

"A. With the sheriff, yes, sir.

"Q. Were those your hogs?

"A. Yes, sir.

"Q. Where did you get them?

"A. Bought them from Mr. Wells.

"Q. How much did you pay him for the hogs?

"A. I paid him $107.00 and allowed him to take one of the hogs.

"Q. You paid him this for thirteen hogs, $107.00?

"A. Yes, sir.

     * * *

"Q. Did you buy these hogs in good faith, thinking you were buying the hogs to be sold and delivered?

"A. Absolutely, yes, sir.

"Q. Out of the regular bunch you bought from Mr. Wells, did you sell any of them?

"A. Let Mr. Wells have one and two of the shoats—all about half starved. Bought them in good faith."

Mr. Wells testified:

"Q. Mr. Wells, do you know Mr. Price who has just left the stand?

"A. Yes, sir.

"Q. He advised that he had thirteen head of hogs that were seized by the sheriff executing a writ of sequestration, and that he purchased these hogs from you. Did you sell him these hogs?

"A. Yes, sir.

"Q. How much did he pay you for them?

"A. Well, I tell you, he came down home about ten o'clock one morning and wanted to buy some hogs I already had in the lot. I told him they were not for sale, but I would carry him down the road and sell him some hogs at Moreland. I took Mr. Price in the car with me and went to Moreland and there were eighteen head of them penned up. I said: 'Price, I am going to give $107.00 for these hogs. I am going to take the boar out, and sell you just what I got, less the boar, $107.00.'

"Q. He paid you then $107.00 for the seventeen hogs?

"A. Yes, sir, eighteen in the bunch. He said he didn't have the money, I said that's all right, I'll pay Scallan for the hogs and you pay me later as you get the money. So he took the hogs and we came back to Willow Glen. He drove his truck and I put my negro driver on my truck, and a couple of extra negroes, and we went down there and got the eighteen head of hogs about a quarter after twelve.

"Q. Well, I am asking you if you sold him those hogs delivered to him?

"A. Yes, sir.

"Q. He paid you $107.00 for seventeen head?

"A. Yes, sir.

"Q. From whom did you purchase them?

"A. From Mr. Scallan.

"Q. And you paid him $107.00 for eighteen head and kept one?

"A. Paid him that same day, that evening."

This testimony is uncontradicted, except by that of plaintiff, Nicholas L. Swann, and he does not describe the hogs by mark or brand and his knowledge of the facts appears to be only general and not at all definite.

He testified:

"Q. Mr. Swann, are you the owner of the thirteen hogs found in the pasture of Mr. Price and seized by the Sheriff?
"A. Yes, sir.
        *   *   *
"Q. Now, Mr. Swann, were those hogs removed from your place after you got out the writ of sequestration, after you filed suit?
"A. We filed suit after fifty-two were seized.
"Q. I am not talking about the fifty-two; I am talking about the hogs we are now in court on; thirteen old hogs?
"A. They were removed before.
"Q. You mean the thirteen head of hogs were removed before you got out your sequestration?
"A. The hogs were gone then."

The trial judge accepted as correct the testimony of Price and Wells as to the ownership of the thirteen hogs and we also accept their testimony as correct.

Price was compelled to employ an attorney to obtain the release of his property from seizure, and Mr. Lamar Polk, an attorney at law practicing at the Rapides parish bar, testified that $50.00 is a reasonable charge for the services rendered by the attorneys for intervenor, third opponent, Charles E. Price, in the premises, and his testimony is not contradicted.

Intervenor, third opponent, Charles E. Price, is entitled to recover from plaintiff as damages the reasonable fees of his attorney in the premises.

Bailey vs. Williams, 158 La. 439, 104 So. 197.

We find no error in the judgment appealed from and it is accordingly affirmed.